# KANSAS CITY v. MULKEY et al., Appellants.

## In Banc, June 30, 1903.

1. **Benefit Assessment: PARKS: AWARD: SUBSEQUNT REPEAL: ES-TOPPEL.** Kansas City has authority under its charter to repeal an ordinance providing for public improvements at any time before the parties assessed with the benefits shall have paid the amount so assessed, and to make void by such repeal the judgment for compensation and benefits; and when the city has exercised that authority it is not estopped in its suit in condemnation under an ordinance subsequently passed for the same improvement, from having a new assessment to ascertain the value of the property taken thereunder, by the fact that under the repealed ordinance an award had been made to the same property-owner therefor; nor can the property-owner demand, on the ground that such ordinance was not repealed in good faith, that the former award be taken as the true value of his property. If the city can not claim any benefit of any award made in the proceeding under the repealed ordinance, neither can the property-owner, for the same reason.

2. **Condemnations: APPEALS: BINDING ON ALL PARTIES.** An appeal by a part of the defendants from a judgment in a condemnation proceeding and a remanding of the cause to the circuit court by stipulation of the parties to the appeal, are just as binding on those parties who do not appeal as upon those who do. A reversal of the judgment means a reversal of the judgment and verdict as a whole, even though there were separate awards as to the defendants. And upon a new trial the valuation fixed by the judgment appealed from for the property of those who did not appeal can not be used as an ascertainment of its value, for one jury is not bound by the verdict of another.

3. **Prior Judgment and Verdict: BINDING ON JURY.** The prior judgment and verdict in the cause is not binding upon the jury upon a new trial as to those parties thereto who were satisfied therewith and did not appeal therefrom. So that in a condemnation suit, where the charter gives the city the right to repeal the ordinance under which certain damages have been awarded to the property-owner but not paid, and makes such judgment void by reason of such repeal, the award can not be used as the valuation of the same property in another proceeding begun under another ordinance for the same purpose. Likewise where a judgment has been rendered setting out separate awards to different defendants and some of them submit thereto, that award can not be used, on a reversal of that judgment and a new trial, as the valuation of the property of those who submitted to that judgment.

Appeal from Jackson Circuit Court.—*Hon. Jas. Gibson,* Judge.

AFFIRMED.

*Gage, Ladd & Small* for appellants.

(1)   (a)   The reversal and remanding of the first condemnation case by this court and the subsequent dismissal thereof by the city, in the circuit court, was all done after the passage of the ordinance repealing the ordinance upon which said first proceedings were based, and directing the dismissal of such proceedings in the Supreme Court and in the circuit court. The order of this court reversing and remanding the case is made pursuant to a stipulation between the city and Bacon and Munroe, as appears on the face thereof, and the stipulation refers to said repealing ordinance for its authority to the city counselor for his action in the premises. The repealing ordinance does not authorize the city counselor to consent to an order in this court reversing and remanding said cause, but to dismiss the same. The repealing ordinance, the stipulation and the order of this court in the premises, and the order of the circuit court in dismissing said cause, must all be construed together, and when this is done it is clear that the effect of it all was simply to dismiss or discontinue the first proceeding as directed by said repealing ordinance.   (b)   Furthermore, the repeal of the ordinance upon which the first proceedings were based, by the express terms of the city charter, section 19, article 10, made the first proceedings void. Consequently nothing further could be done therein except to strike the case from the docket of this court and of the circuit court.   (c)   Besides, it has been decided by this court that a valid ordinance is a jurisdictional requirement in a condemnation proceeding. St. Louis v. Gleason, 89 Mo. 67; Abernathy v. Moore, 83 Mo. 65. It follows from this that, after the ordinance upon which the first

proceedings were based, was repealed, all further proceedings in any court, except to strike the case from the docket, were without jurisdiction and void. In fact, after that ordinance was repealed, there was no such case in court. (d) But even if the first proceeding had been reversed and remanded by agreement of the city and appellants Bacon and Munroe before the repealing ordinance was passed, such reversal would not have been binding upon the Mulkeys and the other parties in interest, because the charter contemplates that the verdict shall stand unless reversed for some error found in the record by the Supreme Court, and the reversal by agreement was not an adjudication of any error. But the reversal by agreement being made after this court was deprived of jurisdiction by the repeal of the ordinance which authorized the proceedings, the signing of the stipulation by Bacon and Munroe, does show that they agreed to the repealing ordinance and were willing to co-operate with the city in carrying out its provisions, which were to dismiss the proceedings in the Supreme Court—that is, dismiss their appeal, no longer prosecute it—for the purpose of enabling the city to re-commence the proceedings, as was done. Hence the propositions we make on this appeal as to the force and effect of the first verdict must be viewed simply as if the first case were discontinued or stricken from the docket of this court and the circuit court upon the passage of the repealing ordinance of April 5, 1899, and not as if said first proceedings had simply been reversed and remanded in the ordinary course for error found by this court. (2) To permit the public to adhere to its purpose to take a man's property, but to disregard the final verdict in such a proceeding of its own motion and immediately commence new proceedings, as was done here, would destroy the judicial character of such proceedings, for two reasons: First. It would render them binding upon one party only, whereas, the primary object and fundamental characteristic

of a judicial proceeding is that it results in an adjudication which is binding upon both parties to the cause. Second. It would practically be making the public a judge in its own cause by enabling it to dismiss, reinstitute and prosecute as many such proceedings as it saw fit, until it got a verdict sufficiently low to meet its own idea of just compensation; that is, to ultimately take the citizen's property at its own price, after harassing him with an unlimited number of lawsuits and tying his property up for an unlimited time, as its pleasure or caprice might dictate. (3) It is a well-settled principle that, when the merits of a controversy have once been fully passed on by a court of competent jurisdiction, it is not open to inquiry between the same parties or privies in any other suit or proceeding. Spradling v. Conway, 51 Mo. 54; Bell v. Hagland, 15 Mo. 360; Clemens v. Murphy, 40 Mo. 121; Wright v. Salisbury, 46 Mo. 26; Wills v. Moore, 49 Mo. 229. (4) While the city may in good faith, abandon one condemnation proceeding and institute another, still, if the abandonment of the first proceeding is not in good faith, that is, not really an abandonment, the city will be estopped in the second proceeding to take the property for a less valuation than was fixed by the verdict in the first proceeding. Rogers v. St. Charles, 3 Mo. App. 41; St. Joe v. Hamilton, 43 Mo. 282; Dillon on Mun. Corp. (4 Ed.), sec 608; Mills, Em. Domain (2 Ed.), sec. 315; State ex rel. v. Keokuk, 9 Ia. 439; Hupert v. Anderson, 35 Ia. 578; Stafford v. Mayor, 7 Johns. (N. Y.) 541; Comm'rs Wash. Park, 56 N. Y. 144; Neal v. Railroad, 2 Grant's Cases (Pa.) 137; Drath v. Railroad, 15 Neb. 367; Chicago v. Railroad, 143 Ill. 641, 32 N. E. 178; Railroad v. City, 148 Ill. 479, 36 N. E. 72; Railroad v. City, 163 Ill. 524, 45 N. E. 120; District Columbia v. Cemetery, 5 App. Cases (D. C.) 497; Schneider v. Rochester, 29 N. Y. Supp. 1005; Cincinnati v. Hott, 5 Ohio N. P. 418. (5) If, notwithstanding the first proceeeding be dismissed, the city adheres to its

purpose to take the particular property for the same purpose, and immediately institutes new proceedings, the abandonment will be held to be merely colorable and not in good faith, that is, no abandonment at all. Rogers v. St. Charles, 3 Mo. App. 41; Chicago v. Railroad, 32 N. E. 178; Railroad v. City, 36 N. E. 72; District v. Cemetery, 5 App. Cases (D. C.) 497; Cincinnati v. Hott, 5 Ohio, N. P. 418. (6) The question raised by appellants was presented by answer or plea, and this is proper. Lewis, Eminent Domain, sec. 390; Railroad v. Railroad, 94 Mo. 543. (7) In fact, *res adjudicata* may be shown in evidence, under a general denial. Therefore, appellants' offer to prove the judgment and verdict in the original proceeding also was proper. Offutt v. John, 8 Mo. 120; Wood v. Ensel, 63 Mo. 194; Strong v. Ins. Co., 62 Mo. 289.

*R. E. Ball* and *D. J. Haff* for respondent.

(1) The proceeding for the condemnation of land for park purposes in Kansas City, which governs the case at bar, is a special one and is covered entirely by the special provisions of the charter relating to condemnation and appropriation of land for park purposes. These charter provisions are the only law of this proceeding. St. Louis v. Gleason, 15 Mo. App. 30; s. c., 93 Mo. 33; State ex rel. Kansas City v. Field, 99 Mo. 352; Kansas City v. Marsh Oil Co., 140 Mo. 458; Kansas City v. Bacon, 147 Mo. 259; Kansas City v. Bacon and Munroe, 157 Mo. 450; Charter of Kansas City, art. 10. (2) The elementary principle of estoppel by judgment is the mutuality of the estoppel. "Where a matter becomes *res adjudicata,* it is equally obligatory on both parties; if it is not binding on both parties, it binds neither." Bell v. Hoagland, 15 Mo. 360; Hermann on Estoppel and Res Adjudicata, secs. 135-136. (3) There was no final judgment in this case and nothing upon which appellants could base the plea

of *res adjudicata* or estoppel. The charter of Kansas City provides that when one of these proceedings is appealed the "judgment stands suspended" until the appeal is determined. It is also a fundamental principle of estoppel that the judgment appealed from with supersedeas, as was done in the case of the former proceeding of which appellant seeks to avail himself, will not, pending the appeal, support the plea of *res adjudicata*. Charter of Kansas City, art. 10, sec. 18; Ketchum v. Thatcher, 12 Mo. App. 185; Young v. Thrasher, 61 Mo. App. 414; Norton v. Bohart, 105 Mo. 633. (4) In this proceeding, as well as under the general rule of law in Missouri, the other defendants, although not appealing, are absolutely bound by the result of that appeal. "The court may, on its own motion, or on motion of the city, or of any party interested in the proceedings, filed within four days after the rendition of the verdict, for good cause, set aside the verdict of said jury of freeholders, and thereupon, without further notice, may appoint a new jury of freeholders to make a new appraisement or assessment." Charter of Kansas City, art. 10, sec. 16; State ex rel. v. Gill, 84 Mo 248. (5) Even without the repealing ordinance. the appellants in the first case, Bacon and the Munroes, and Kansas City, respondent, had the right to stipulate for the reversal of the judgment and a new trial, and when the case was reversed and remanded by stipulation, the former verdict and judgment was a nullity and a new trial was necessary, and on said new trial appellants would not have been entitled to stand on the previous verdict. It is an elementary principle of estoppel "that a reversal of the judgment nullifies all that has been done and leaves the parties in the same situation as to rights and remedies in regard to subject-matter of litigation as if no judgment had been rendered. It destroys the estoppel." Hermann on Estoppel and Res Adjudicata, sec. 105, p. 106; Crispen v. Hannovan, 86 Mo. 160; Taylor v. Von Schraeder, 107

Mo. 206; Norton v. Bohart, 105 Mo. 633; French v. Edwards, 4 Sawyer 125; Wood v. Jackson, 8 Wend. 9; Smith v. Frankfield, 77 N. Y. 414. (6) It is the established law of this State, as well as in other States, even in the absence of special legislative authority, that municipalities have the right to abandon proceedings for the condemnation of private property for public use of the municipality at any time before the rights of either party become vested by occupation of the property on the part of the municipality. State v. Hug, 44 Mo. 116; Whyte v. Kansas City, 22 Mo. App. 409; Simpson v. Kansas City, 111 Mo. 237; Slattery v. St. Louis, 120 Mo. 187; Silvester v. St. Louis, 65 S. W. 278. (7) But this court has expressly decided that a judgment establishing a public highway "on payment of defendant's damages and costs" is not a bar to another proceeding to establish the same road where such damages and costs have not been paid, and the proceeding was never consummated. Bennett v. Woody, 137 Mo. 381; St. Joseph v. Hamilton, 43 Mo. 282; Trustees v. Haas, 42 Ohio St. 239; Garrison v. New York, 21 Wall. 196; Railroad v. Nesbit, 10 How. (U. S.) 395.

ROBINSON, C. J.—This is a proceeding by Kansas City, begun in June, 1899, to condemn lands for a park, to be known as "West Terrace," under an ordinance of the city passed and approved April 5th of that year. The lands sought to be condemned included 28.62 acres, of which amount the appellants William and Catherine Mulkey own about six acres, valued by the jury in the present proceeding at $55,590. For answer defendants William and Catherine Mulkey (the appellants here) filed the following:

"Now at this day come the defendants, Catherine Mulkey and William Mulkey, her husband, and show to the court that heretofore, to-wit, at the April term, 1896, of this court, the said city of Kansas City, under

and by virtue of an ordinance of said city providing for the establishment of said West Terrace Park, approved on the 11th day of September, 1895, duly instituted proceedings to condemn the same property of these defendants which said city proposes to condemn in this proceeding as a part of said West Terrace Park; that said proceeding was regularly prosecuted to a final determination in this court, and a verdict was rendered therein on the 5th day of October, 1896, duly assessing the value of defendants' said property at the price and sum hereinafter mentioned. The said city filed no objections or exceptions to said verdict, and that on or about the 13th day of October, 1896, at the instance and request of said city, said verdict was confirmed and judgment rendered accordingly, condemning said property as and for said West Terrace Park. That said city never appealed from said verdict and judgment, and that the only parties who did appeal therefrom were Martha E. Bacon, James Munroe and Willard N. Munroe, owners of a small portion of the property in the benefit district, which had been assessed with benefits in said proceeding, said appellants giving a supersedeas bond, and that said appeal remained pending in the Supreme Court of Missouri, until disposed of, as hereinafter set forth.

"That afterwards, on the 23rd day of June, 1897, the park board of said city caused to be prepared and introduced into the Common Council of said city, an ordinance to repeal said first-mentioned ordinance, and to modify said West Terrace Park, by providing for the condemnation therefor of a part of the property condemned by said first proceeding, which said ordinance said Council refused to pass. That afterwards, on the 5th day of September, 1898, said park board prepared and caused to be introduced into said Council another ordinance to repeal said first-mentioned ordinance and to reduce and modify said park, by providing for the condemnation therefor of a part only of the property

sought to be condemned under said first-mentioned ordinance, which said ordinance said Council also refused to pass. That in each of said ordinances so prepared and introduced by said park board, the property of these defendants was part of the property proposed to be condemned and taken as part of said West Terrace Park.

"That on the 5th day of April, 1899, with the concurrence of the Board of Park Commissioners, and before any benefits assessed in said first proceedings were paid, and not until then, an ordinance was duly passed by said city, repealing said first-mentioned ordinance, which said ordinance is in words and figures as follows:

[Here ordinance is copied in full.]

"That afterwards, on April 26, 1899, the attorneys for said city and for said Bacon and others, appellants in said first-mentioned proceedings, filed in the Supreme Court of Missouri, a stipulation in writing, in words and figures as follows:

" 'In the Supreme Court of the State of Missouri.

" 'In the Matter of the Condemnation of Land for opening and establishing a Public Park in the West Park District in Kansas City, Missouri, to be known as West Terrace.

" 'Kansas City, Respondent, v. Martha E. Bacon, James Munroe and W. N. Munroe, Appellants.

" 'STIPULATION.

" 'By authority of an ordinance of Kansas City, Missouri, number 11429, approved April 5, A. D. 1899, and entitled, "An ordinance to repeal ordinance number 6751, of Kansas City, Missouri, approved September 11, A. D. 1895, providing for the establishment of a public park in the West Park district in Kansas City, Missouri, to be known as West Terrace," it is hereby stipulated between the respondent and appellants in the above entitled cause, that an order may be entered by this court reversing and remanding the above entitled cause to the circuit court of Jackson county, Missouri,

and Kansas City, respondent in the above entitled cause, hereby waives all right to exceptions to said order, and all right to file any motion for rehearing therein. Appellants to have taxed in their favor all taxable costs of appeal incurred by them.

" 'D. J. HAFF,

Attorney for Respondent.

" 'BROWN, CHAPMAN & BROWN, LANGSTON BACON,

Attorneys for Appellants.

" 'Filed April 26, 1899.

JNO. R. GREEN, Clerk.'

"That said Supreme Court, without hearing said cause, and pursuant to said stipulation and repealing ordinance, entered an order in said cause on the 26th day of April, 1899, in words and figures as follows:

" 'In the Supreme Court of Missouri, April Term, 1899.

" 'Court in Banc.

" 'In re West Park District, Kansas City, Respondent, v. Martha E. Bacon, James Munroe, and Williard N. Munroe, Appellants.

" 'Appeal from Jackson Circuit Court.

" 'Now at this day come said parties, by attorneys, and upon their stipulation it is considered and adjudged by the court that the judgment rendered in this cause by the Jackson Circuit Court be reversed, annulled and for naught held and esteemed, and that the said appellants be restored to all things, which they have lost by reason of the said judgment.

" 'It is further considered and adjudged by the court that the said cause be remanded to the said Jackson Circuit Court for further proceedings to be had therein, and that the said appellants recover against the said respondent their costs and charges herein expended, and have therefor execution.

" 'State of Missouri, Sct.

" 'I, Jno. R. Green, clerk of the Supreme Court of

the State of Missouri, certify that the foregoing is a full, true and complete transcript of the judgment of said Supreme Court, entered of record at the April term thereof, 1899, and on the 26th day of April, 1899, in the above entitled cause.

" 'Given under my hand and seal of said court, at the City of Jefferson, this 4th day of May, 1899.

" '(Seal.)        JOHN R. GREEN, Clerk.'

"That afterwards, the attorneys for said city procured an order to be entered in this court on the 27th day of May, 1899, dismissing said cause.

"All of which said orders and proceedings in said Supreme Court and in this court were without the knowledge or consent of and without notice to the said defendants. But these defendants say that nevertheless said city never did in good faith, or at all, abandon its design and purpose of appropriating the property of these defendants as and for a part of said West Terrace Park. That on the same day and at the same session of the Common Council of Kansas City, said ordinance repealing said first-mentioned ordinance and annulling said first proceeding, was passed, and immediately thereafter, to-wit, on the third day of April, 1899, the ordinance under which this proceeding was instituted was passed by the Common Council of said city; and that said repealing ordinance was approved by the mayor of said city, on the fifth day of April, 1899, at 11:10 o'clock in the morning; and at 11:20 o'clock in the morning of the same day the ordinance under which this proceeding was instituted was approved by said mayor, and that this proceeding was instituted in this court on the third day of June, 1899.

"That the ordinance under which this proceeding was instituted differs from said first ordinance and proceeding only in this—that the area of the park to be established is less, by the amount of 16.51 acres, than was provided for in said first-mentioned ordinance, and that such reduction in area is accomplished by omitting

from the property to be taken a portion of the property condemned in the first proceeding, but not including any property as a part of said park, that was not condemned by said first proceeding, the area under the first proceeding being 45.13 acres, and under this proceeding 28.62 acres.

"And these defendants say that said city passed said ordinance repealing and annulling said first-mentioned ordinance and proceeding, and enacted the ordinance providing for, and instituted this proceeding, simply and solely for the purpose of omitting a part of the property originally included in said West Terrace Park, and of securing the remainder thereof, to-wit, the defendants' said property and the other property retained for said park, at a new, and if possible, a less valuation than was fixed by said first proceeding.

"And these defendants state that by reason of said first-mentioned condemnation proceeding and the continuation thereof by this proceeding, they were, from the institution of said first proceeding until this date, deprived of their right to sell said property or to improve the same, or to make other beneficial use of the same. That they were put to great cost and expense for counsel fees and otherwise, in defending their rights in said first-mentioned proceeding, and were thereby otherwise greatly damaged and injured.

"Defendants allege that to permit said city to take their said property in this proceeding at a less sum than was allowed them therefor in said first proceeding under all the circumstances hereinbefore set forth, would be contrary to the Constitution of this State, which prohibits the taking or damaging of private property for public use, without just compensation, and provides that no person shall be deprived of his property without due process of law, and would also be contrary to the fourteenth amendment to the Constitution of the United States, which provides that no State shall deprive any person of life, liberty or property without

due process of law, nor deny to any person within its jurisdiction the equal protection of the law.

"Wherefore defendants say that said city, by reason of the matters and things hereinbefore set forth, and the law of the land, is and ought to be estopped to take the said property of these defendants in this proceeding for less than the sums awarded to them in and by the verdict and judgment of this court in said first-mentioned proceeding, which is and was as follows, to-wit:"

[Here follows a description of defendants' property sought to be condemned with the amount of the award made to them by the jury in the first or prior proceedings.]

"Wherefore, these defendants pray the court to enter judgment herein, fixing the value of defendants' said property sought to be taken in this proceeding, at the sum aforesaid, so awarded therefor in said first proceeding, and for such other relief as defendants are entitled to in the premises."

This answer, on motion of the city, was stricken out, and when the case came up for hearing, and before any evidence was introduced by the city, these appellants (two of a large number of defendants then before the court) objected to the introduction of any evidence as to the value of their property, except the verdict of the jury in the former condemnation proceedings referred to in their answer. When the city called its witness to prove the values of defendants' property to be condemned, the defendants Mulkey objected to the witnesses testifying as to the value of their property, for the same reason given above—that the value thereof had been fixed by the jury in the former condemnation proceedings mentioned in their answer. This objection was overruled by the court, and the witnesses were permitted to testify, to which ruling and action of the court appellants duly excepted. At the close of the city's testi-

Vol 176 mo—16

mony the appellant Mulkeys offered to show in their behalf the prior condemnation proceedings by the city to condemn their property, the amount of the verdict of the jury therein, and all the matters and facts set up in their answer, to which offer the city objected, and said objections were by the court sustained and appellants duly excepted. The appellants then called several witnesses who were permitted to testify as to the value of their property to be taken, and after due consideration the jury returned into court a verdict assessing the value of appellants' property to be taken at $55,590, out of a general total allowed to all the interested defendants of $217,256.20. From the judgment predicated upon this assessment, the defendants Mulkey, after the usual steps taken, have brought the case here by appeal.

It will be observed that while defendants' answer that was stricken out contains the statement that "the city never in good faith, or at all, abandoned its original design and purpose of appropriating the property of these defendants as and for a part of said West Terrace Park," and also contained the further statement that the city "enacted the ordinance providing for the institution of this proceeding, simply and solely for the purpose of omitting a part of the property originally included in said West Terrace Park, and of securing the remainder thereof, to-wit, the defendants' said property and other property retained for said park, at a new, and if possible, a less valuation than was fixed by said first proceeding," they did not ask therein, nor in any way seek, to have the present proceedings quashed, dismissed or abated for either of these reasons, nor do they plead the trial and judgment in the former proceeding in bar of the present proceeding; but on the contrary, their chief claim seems to have been that the city "ought to be estopped to take the said property of these defendants in this proceeding for less than the sum awarded to them by the verdict and

judgment of the court in said first-mentioned proceed·
ing," amounting to $93,964.   Their answer closes with
the prayer that the court "enter judgment therein fixing
the value of defendants' said property sought to be
taken in this proceeding at the sum aforesaid so award-
ed therefor in said first proceeding," etc.

As said, while the allegation of want of good faith
on the part of the city in abandoning the prior pro-
ceeding to condemn defendants' property is contained
in defendants' answer, as also the averment that the
subsequent or present proceeding was begun simply
and solely for the purpose of securing defendants'
property at a new and less valuation than was fixed
in the prior proceeding, the fact and circumstances un-
der which the abandonment did occur, as well as the
purpose of the change in the present proceeding, was
set out and disclosed in the answer in such way as to
rob the allegation of the want of good faith in the city of
all force, even though the subsequent part of defendants'
answer had not disclosed the fact that their real pur-
pose was not to have the present proceeding abated
on account of the city's want of good faith, but was to
have the court, as they prayed it to do, assess their.
property in the present proceeding at the value fixed
by the jury in a prior proceeding that had for its pur-
pose the condemning of defendants' land along with
that of the land of others, not included in this proceed-
ing.

The chief question, then, for determination is, as
we understand appellants' position, did the trial
court err in striking out appellants' answer setting up
the verdict in the prior proceeding and in excluding
such verdict and the judgment thereon from the con-
sideration of the jury in the present proceeding, and
in permitting them to consider other and independent
testimony as to the then valuation of the property
sought to be taken under the present proceeding?

Appellants in their brief expressly say that no con-

tention is now made by them that the city was bound to take their property at the valuation fixed by the determination of the jury in the first proceeding, or that the city might not have abandoned, in good faith, the purpose of taking said property absolutely, and subsequently to have instituted a new proceeding to condemn the same, and yet by a process of reasoning not altogether clear to the writer, the proposition is reached that the verdict of the jury in the prior proceeding of the city against them should, in some way, be treated as a final adjudication upon the question of the value of their property, and binding upon the court upon that issue in the present proceeding, and that the city should be now estopped to dispute that valuation so fixed in the prior proceeding.

There is in this case no place for the application of the doctrine of *res adjudicata* or estoppel, so much discussed in appellants' brief. It is most certain that the city could not have availed itself in the present proceeding of the verdict establishing the value of appellants' property in the prior proceeding. Against such an effort on the part of the city it would have been a complete answer to have said, 'You prosecuted the former proceeding under authority of an ordinance which you have since repealed, and by the provisions of your charter, which is the sole law governing your right to prosecute the former, as this latter proceeding, it is provided that the repeal of the ordinance providing for a given improvement will operate to render void all proceedings had thereunder. In other words, such repeal leaves the parties thereto, and all findings therein, as if the proceedings had never been instituted.

Section 19 of article 10 of the charter of Kansas City, provides:

"The Common Council shall have the power, with the concurrence of the Board of Park Commissioners, at any time before any of the parties assessed with

benefits shall have paid the amount so assessed, to re-
peal the ordinance ordering the proposed improvement,
if such repeal be deemed for the best interests of the
city; and in such event the judgment for compensation
and benefits shall be void.''

That the city, in view of this charter provision,
could not have claimed the benefit of any portion of
the prior proceeding, or of any question determined
therein after it had repudiated and abandoned such
proceeding by the repeal or the ordinance upon which
the proceeding was predicated, needs only to be men-
tioned to establish the correctness of the proposition.

If, then, the city could not claim the benefit of any
and every question determined in the prior proceed-
ing after the repeal of the ordinance upon which that
proceeding was predicated, the defendants, for like
reasons, ought also to be denied that right. A contrary
proposition would violate every principle upon which
estoppel is founded.

If the repeal of the ordinances under which the
prior proceeding was instituted rendered void all that
was done thereunder; if it released the property sought
to be taken as well as the property assessed with ben-
efits to pay therefor, on what principle can it be con-
tended that the city, in an independent proceeding,
brought under a new and independent ordinance, is
bound, at the option of one whose property is sought to
be condemned in said second proceeding, by the value
of said property assessed in a prior abandoned proceed-
ing?

If the judgment upon the question of the value of
defendants' property in the prior proceeding is void,
and such is its effect by the terms of the charter under
which both this and the prior proceedings were author-
ized and instituted, upon what theory or under the
application of what principle of law did appellants ask
or expect the trial court to take cognizance of a verdict
and judgment rendered in the original proceeding, and

impose it (as a fixed and unalterable standard of value, of defendants' property) upon the jury impaneled in the present proceeding called to determine that question, before appellants' property could be taken for public use under such proceeding?

If we will suppose that appellants' property, the value of which had been fixed by the verdict of the jury in the prior proceeding begun by the city in 1896 to condemn same, had doubled or quadrupled in value since that time (a condition not unusual in the prosperous and growing cities of our country), what court would have tolerated for an instant an effort by the city to have it appropriated for public use, under a new and independent proceeding brought in 1899 at the value fixed for its appropriation in 1896, under proceedings voluntarily abandoned by the repeal of the ordinance authorizing the proceeding? Or if we will again suppose that since the value of defendants' property was determined in 1896 under proceedings afterward abandoned by the city, they had placed thereon valuable improvements, would that additional value be ignored under a new proceeding begun in 1899 to condemn the same property, for a like contemplated use. Most certainly not, and yet such would be the result, if the position of the appellant in this case is correct, that the award of the jury in the prior abandoned proceeding by the city should be made the valuation of defendants' property in the present inquest. As the valuation of defendants' property by the jury in the prior proceeding under the circumstances given, could not be made availing to the city in a subsequent proceeding begun to condemn the same property and to determine defendants' damage for its appropriation, for a like reason it must be unavailing to defendants now that their property, judging from the great discrepancy between the previous and subsequent valuation made thereof, has undergone a decline, a condition also quite

common in our cities when they have become more progressive, at times, than prosperous.

But if we should ignore the effect of the repealing ordinances passed by the city, April 5, 1899, and the dismissal of the first proceeding in obedience to its terms, and treat this as in some way but a continuance of the case under the original proceeding, and consider the case simply as if it had been reversed by this court upon the stipulation and agreement between the city and the appellants in that proceeding, these appellants would still be in no better attitude to make the contention that a new verdict by a jury in a subsequent hearing would not be necessary before their lands could be appropriated by the city for public use, or that the prior award was the proper basis for the subsequent valuation to be made for the property to be taken; nor could it make any difference in considering the effect of the assessment made by the first jury, that the appellants here did not appeal from the judgment on said first assessment, or that they were satisfied with the appraisement then made by the jury called to determine the question of the value of their property proposed to be taken.

An appeal was taken by two of the parties interested in the result of that proceeding, and these appellants, as defendants therein, though not appealing, are equally bound by the result of that appeal as though they had joined therein. This court has held in cases of this character that, upon a reversal, the whole verdict and judgment is set aside, even though one person only prosecuted his or her appeal and the assessment of damages was made to each individual defendant as his or her interest in the property to be taken was made to appear, and that a new trial must be had as to all defendants upon the issues of the value of their property sought to be condemned.

So, whether we consider the case now before us

as in some way but a continuation of the original proceeding begun in 1896 by the city to condemn defendants' property for public use, or as a new proceeding begun for that purpose in 1899, based upon an ordinance passed subsequent to the repeal of the ordinance authorizing the first proceeding, the result must be the same, so far as concerns the question of the mode and manner of ascertaining the value of defendants' property proposed to be taken.   On a new trial, in the original proceeding resulting from a reversed judgment therein, as at a trial in a new proceeding, as this is, to condemn defendants' property, their damages should be determined by the then value of their property to be taken, independent of the consideration of its value as determined, in any way or by anybody, at some previous date or on some prior occasion.

We have examined all the authorities cited by appellants, but in none do we find where a rule has been announced, or where a court of last resort has held, that a jury impaneled in a new or subsequent condemnation proceeding by a municipality to assess damages and benefits, was bound by or must adopt the verdict or award made by a jury in a prior proceeding that had been prosecuted for the same purpose, and in one case cited (City of St. Joseph v. Hamilton, 43 Mo. 282, from our own State), where this question was directly presented, the attempted practice was condemned.

In that case, which was a proceeding begun originally before the mayor of the city of St. Joseph to condemn a strip of lands owned by certain of its citizens, for the purpose of widening one of the streets of the city by order of its Council under its charter power, it seems that when the jury was sworn, the defendants sought, as the appellants did in this case, to have the damages to be awarded them determined by a prior award that had been made in their behalf in a previous condemnation proceeding by the city against them for the same purpose.   This was denied to them in the pro-

ceeding before the mayor and their damages were assessed at the sum of $1,500. From this assessment the defendants prosecuted their appeal to the circuit court, and in that court they again moved that judgment be entered in their favor for three thousand dollars, the amount awarded by the jury in the first or prior condemnation proceeding. This motion the court sustained and gave judgment accordingly. The case was then taken to the district court where a reversal was had and from there it came to this court for revision, and upon this point the court said:

"The first question that will be considered is the action of the circuit court in entering up judgment for the amount assessed by the first jury. How it was presented in such a shape that the court could take jurisdiction of it I can not comprehend. It was a distinct proceeding of itself. The second proceeding was in the nature of a new suit, commenced on new process, and was not a continuation of the former. . . If the second assessment in this case was a nullity, that was good ground for quashing it, but it could not authorize the court to render a judgment on a matter not before it."

Although this case has since been overruled upon the main proposition discussed therein, and upon which the case was made to turn, to-wit, that the city by the first proceeding against defendants' property was bound absolutely from beginning the second proceeding in which the appeal was taken, upon the first question considered by the court, which was as to the court's want of authority to take cognizance of the assessment and verdict in the first or prior proceeding to condemn, and make a jury impaneled in the new or second proceeding for the same purpose adopt arbitrarily the assessment or verdict of the jury in the first proceeding, no question has ever been made, and the proposition then announced is still the law.

The next case from this State cited by appellants,

as supporting their contention, is Rogers v. City of St. Charles, 3 Mo. App. 41.

This was an action by plaintiff, a citizen of St. Charles, to recover against the city the value of certain real estate which the city had taken and appropriated for street purposes. To this action, the city answered, claiming the property under condemnation proceedings previously begun to appropriate same to widen one of its streets, and averred its readiness to pay to plaintiff the amount so awarded him in that proceeding, and tendered the amount into court and prayed judgment. To this answer plaintiff replied denying the legality and regularity of the condemnation proceeding under which the city claimed the property taken, and also set up the fact that a prior proceeding to the one under which the city claimed the property had been begun by the city to condemn the same identical property, and that the amount of his damages for the property to be taken as then made fixed its value at $1,000 and pleaded that the prior condemnation proceeding was a bar to the commencement of the second proceeding. On motion this last part of plaintiff's reply was stricken out. At the trial plaintiff's contention seems to have been that he was entitled to damages in the sum of $1,000, the amount of the award under the first or prior condemnation proceeding begun by the city against his property, while that of the city was that plaintiff's damages should be limited to $450, the amount of the award at the second or subsequent condemnation proceeding begun by it for the purpose of condemning defendant's property after the abandonment of the first proceeding. In that case no occasion existed for a consideration of the proposition involved in the prayer of defendants' answer, that was stricken out in this case; nor was there said in that opinion in disposing of the issues involved (or in the dicta indulged in, in which it abounds) anything giving sanction to the contention made by the appellant in this case, that the verdict of the jury in

the prior abandoned proceeding by a city to condemn
one's property for public use, could by any process
known to the law, be imposed upon a jury, impaneled
in a subsequent proceeding by the same municipality,
to condemn a part of the same property involved in the
prior abandoned condemnation proceeding.  All that
was said by the court in that case, after it had deter-
mined that the second condemnation proceeding begun
by the city of St. Charles to condemn plaintiff's prop-
erty was invalid because the record thereof failed to
show any attempt on the part of the city to agree with
the plaintiff upon the value of his property prior to
the institution of the proceeding (as the charter re-
quired should be done as a condition precedent to the
city's right to exercise the right of eminent domain),
was:

"But we are of the opinion that this value was
fixed by the first award; that this is binding upon the
city, except in the event of the abandonment of the de-
sign of widening the street; and that it is not compe-
tent for the city, adhering to its original purpose to
widen the street, to have recourse, tentatively, to a num-
ber of juries, to reject such findings as it does not think
eligible, and to fasten upon and hold the citizen to the
first one which places an estimate in its eyes sufficiently
low upon the property the condemnation of which is
sought. . . . We can not perceive what possible
advantage can arise from the constitutional declaration
that private property shall not be taken for public use
without just compensation, if the State or any of its
deputies, exercising the right of eminent domain, may
cause as many inquests as it pleases of the value of the
property to be condemned, and set aside as many of
them as it sees fit, until one is found sufficiently small
to suit its notions of a just compensation, and then to
declare it to be so.  Of course, this permits one of the
parties to a controversy to determine a judicial question

in his own favor, and compel the other party to submit to the decision.''

Under the issue tendered by the pleadings in that case, and as the parties thereto sought to have the case tried, the question of the amount of damages for which the plaintiff was suing was made to turn upon the validity or invalidity of proceedings in which the measure of plaintiff's damages for the property taken by the city had been previously awarded, the city tendering the amount of one award made, the plaintiff asking that his damages be determined at the amount fixed in a prior award made in the same character of proceeding. No question of the right to have a verdict, or the judgment based thereon, in one proceeding, imposed upon a jury impaneled in another proceeding of the same character, was contemplated, considered or discussed in that case.

Not only does that case not support appellants' contention that the verdict or award in the prior proceeding against appellants' property should determine the amount of the judgment in the present proceeding, but the proposition of law which the opinion does assert, and now urged upon our consideration by appellants, ''that a municipality in this State should be denied the right to pronounce a particular property sought to be condemned necessary or unnecessary according to the terms at which it may be acquired,'' has been expressly disapproved by this court. [Simpson v. Kansas City, 111 Mo. 243.]

It will be sufficient, without further comment upon the numerous authorities cited by appellant, to say, that none go further than to hold that where there is a valid, subsisting and final judgment in condemnation proceedings, unappealed from, not vacated or set aside, such former proceeding or judgment therein may be interposed to bar the prosecution of a new proceeding for the condemnation of the same property for the same purpose by the same corporation. None have gone to

the extent of holding that in a second proceeding, whether barred or not barred by a former proceeding, the verdict or judgment of the former proceeding may be made the basis for a verdict and judgment in the latter proceeding, as appellants sought to have the court do for them in this proceeding.

Seeing no error in the action of the trial court in striking out appellants' answer filed, and nothing appearing to indicate that appellants have been aggrieved by the award made to them at the present inquest, the judgment of the circuit court will be affirmed. A'l concur.